## UNITED STATES  DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

**MONTE WHITE**                                        **CIVIL ACTION**

**versus**                                             **NO. 05-3667**

**N. BURL CAIN, WARDEN**                               **SECTION: "B" (3)**

## REPORT AND RECOMMENDATION

This matter was referred to this United States Magistrate Judge for the purpose of conducting a hearing, including an evidentiary hearing, if necessary, and submission of proposed findings of fact and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B) and (C) and, as applicable, Rule 8(b) of the Rules Governing Section 2254 Cases in the United States District Courts.  Upon review of the record, the Court has determined that this matter can be disposed of without an evidentiary hearing.  See 28 U.S.C. § 2254(e)(2).[1]  Therefore, for all of the following reasons, **IT IS RECOMMENDED** that the petition be **DISMISSED WITH PREJUDICE**.

---

[1] Pursuant to 28 U.S.C. § 2254(e)(2), whether to hold an evidentiary hearing is now a statutorily mandated determination.  According to Section 2254(e)(2), the district court generally may hold an evidentiary hearing only when the petitioner has shown that either the claim relies on a new, retroactive rule of constitutional law that was previously unavailable (28 U.S.C. § 2254(e)(2)(A)(i)) or the claim relies on a factual basis that could not have been previously discovered through the exercise of due diligence (28 U.S.C. § 2254(e)(2)(A)(ii)); and the facts underlying the claim show by clear and convincing evidence that, but for the constitutional error, no reasonable jury would have convicted the petitioner (28 U.S.C. § 2254(e)(2)(B)).

Petitioner, Monte White, is a state prisoner incarcerated at the Louisiana State Penitentiary, Angola, Louisiana.  On June 20, 1998, he was convicted of first degree murder in violation of La.Rev.Stat.Ann. § 14:30.[2]  On July 15, 1998, he was sentenced to a term of life imprisonment without benefit of probation, parole, or suspension of sentence.[3]  On November 21, 2000, the Louisiana Fourth Circuit Court of Appeal affirmed his conviction and sentence.[4]  He then filed with the Louisiana Supreme Court a related writ application which was denied on January 31, 2003.[5]  He filed an application for reconsideration which was likewise denied on April 21, 2003.[6]

On or about August 1, 2003, petitioner filed with the state district court an application for post-conviction relief.  That application was denied on December 15, 2003.[7]  He next filed with the Louisiana Fourth Circuit Court of Appeal an application for a supervisory writ of review[8] which

---

[2]  State Rec., Vol. II of V, trial transcript, p. 325; State Rec., Vol. I of V, minute entry dated June 19, 1998.

[3]  State Rec., Vol. II of V, transcript of July 15, 1998; State Rec., Vol. I of V, minute entry dated July 15, 1998.

[4]  State v. White, 802 So.2d 869 (La. App. 4th Cir. 2001) (No. 2000-KA-1740); State Rec., Vol. II of V.

[5]  State v. White, 836 So.2d 56 (La. 2003) (No. 2002-KO-0121); State Rec., Vol. V of V.

[6]  State v. White, 841 So.2d 776 (La. 2003) (No. 2002-KO-0121); State Rec., Vol. V of V.

[7]  State Rec., Vol. V of V, Judgment dated December 15, 2003.

[8]  State Rec., Vol. V of V.

was denied on March 1, 2004.[9]  He then filed with the Louisiana Supreme Court an application for

a writ of certiorari[10] which was denied on February 25, 2005.[11]

On July 11, 2005, petitioner filed this federal application for *habeas corpus* relief.[12]

In support of his application, he raises the following claims:

1.  The trial court erred in disallowing testimony regarding a witness'

    mental state;

2.  The trial court erred in allowing hearsay testimony;

3.  The trial court erred in allowing evidence of other crimes;

4.  The trial court erred in allowing an impermissible closing

    argument;

5.  There was insufficient evidence to support petitioner's

    conviction;

6.  The trial court erred in allowing the admission of prejudicial

    photographs;

7.  Petitioner received ineffective assistance of counsel;

---

[9] State v. White, No. 2004-K-0150 (La. App. 4th Cir. Mar. 1, 2004) (unpublished); State Rec., Vol. IV of V.

[10]  State Rec., Vol. IV of V.

[11]  State *ex rel.* White v. State, 894 So. 2d 1140 (La. 2005) (No. 2004-KH-1025); State Rec., Vol. IV of V.

[12]  Rec. Doc. 1.

8. The grand jury which indicted petitioner was empaneled in an

   unconstitutional manner; and

9. The cumulative errors in this case deprived petitioner of due

   process and a fair trial.

The state concedes that petitioner's application is timely filed and that he exhausted

his state court remedies.[13]

<u>Standard of Review</u>

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA")

comprehensively overhauled federal *habeas corpus* legislation, including 28 U.S.C. § 2254.

Amended subsections 2254(d)(1) and (2) contain revised standards of review for questions of fact,

questions of law, and mixed questions of law and fact. Provided that the state court adjudicated the

claim on the merits, pure questions of law and mixed questions of law and fact are reviewed under

§ 2254(d)(1) and questions of fact are reviewed under § 2254(d)(2). <u>Hill v. Johnson</u>, 210 F.3d 481,

485 (5th Cir. 2000).

As to questions of law and mixed questions of law and fact, a federal court must defer

to the state court's decision unless it "was contrary to, or involved an unreasonable application of,

clearly established Federal law, as determined by the Supreme Court of the United States." 28

U.S.C. § 2254(d)(1). The United States Supreme Court has noted:

> § 2254(d)(1)'s "contrary to" and "unreasonable application" clauses
> have independent meaning. A federal habeas court may issue the
> writ under the "contrary to" clause if the state court applies a rule

---

[13] Rec. Doc. 28, pp. 2-5.

different from the governing law set forth in our cases, or if it decides a case differently than we have done on a set of materially indistinguishable facts. The court may grant relief under the "unreasonable application" clause if the state court correctly identifies the governing legal principle from our decisions but unreasonably applies it to the facts of the particular case. The focus of the latter inquiry is on whether the state court's application of clearly established federal law is objectively unreasonable, and we stressed in Williams[ v. Taylor, 529 U.S. 362 (2000)] that an unreasonable application is different from an incorrect one.

Bell v. Cone, 535 U.S. 685, 694 (2002) (citations omitted).

As to questions of fact, factual findings are presumed to be correct and a federal court will give deference to the state court's decision unless it "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2); see also 28 U.S.C. § 2254(e)(1); Hill, 210 F.3d at 485.

Facts

The facts of the instant case, as summarized by the Louisiana Fourth Circuit Court of Appeal on direct appeal, are as follows:

On July 22, 1997, Mark Lewis and Raymond Smith were shot. Smith died. In response to police questioning in the ambulance as he was being taken from the scene, Lewis said that "Monte" shot him. At the hospital, Detective Richard Williams questioned Lewis; and Lewis said that the perpetrator was named Monte, was twenty years old, drove a four door Cutlass, and lived on Andry Street. The defendant was arrested. On July 25, 1997, Lewis was shown a photographic lineup at the hospital and identified the defendant.

At trial, Lewis said that he knew the defendant and had seen him earlier on the evening of the shooting. Immediately prior to the shooting, Lewis was walking with Smith. The defendant and another man walked up from behind a parked car and began shooting. Lewis identified the defendant at trial. Lewis admitted to convictions for theft and possession of cocaine. He also said he had taken cocaine the day of the shooting.

- 5 -

The defense was misidentification.  A friend of the defendant said that he saw him at a movie the night of the crime.  The defendant's mother said he had dropped his children off on the way to the movie and picked them up later.  A pair of brothers who were neighbors of the defendant said they were driving when they heard the gunshots and saw two people running from the scene, both of whom were too short to be the defendant.  The defendant's girlfriend said they were at the movie during the crime.

The defendant took the stand and said he was at the movie. He admitted to prior convictions including crack possession.  He said that he had seen Lewis earlier in the evening and that Lewis was looking for drugs.

The defendant's ex-girlfriend and mother of one of his children took the stand and said that she had known the defendant to carry a gun in the past and that he had shot at her.[14]

### Witness' Mental State

Petitioner argues that the trial court erred in disallowing testimony regarding the mental state of Mark Lewis, one of the state's witnesses.  On direct appeal, the Louisiana Fourth Circuit Court of Appeal rejected that claim, holding:

> [T]he defendant moved for the psychiatric evaluation of Lewis prior to trial.  He attempted to introduce evidence that two weeks prior to trial, Lewis had threatened to stab his mother and infant sister and that he was suicidal.  The trial judge denied the motion, and ruled the evidence inadmissible.  In particular, the judge stated:
>
>> I have talked to Mr. Lewis in chambers and I'm satisfied that his memory of the events of that evening are not clouded by anything that may have happened subsequent, and I'm also satisfied that the incident in which there was an allegation that there may have been some suicidal tendencies is not in any way related to the events of July 22nd and that incident

---

[14] State v. White, 802 So.2d 869, 871 (La. App. 4th Cir. 2001) (No. 2000-KA-1740); State Rec., Vol. II of V.

is completely unrelated to any issue of credibility for this witness to testify today.

The defendant cites La. C.E. art. 607 [FN1] in support of his argument.  The article establishes the right to attack and support credibility.  However, the defendant had ample opportunity to cross-examine the witness in this case, and did so.  Moreover, there was testimony by three different officers on the scene that Lewis was "in full faculties" and "coherent" in the ambulance; and "conscious, responsive" in the hospital.  Lewis himself said he was conscious during both instances.  As to his trial identification, the jury heard ample evidence that Lewis underwent brain surgery and had part of his brain removed as a result of this crime.  From a reading of the transcript, Lewis's testimony appears to have been clear and lucid.  He was confident of his identification at trial, and confident of his prior identifications.  The jury, who was able to witness his demeanor, was free to determine the extent of Lewis's lucidity.

[FN1] La. C.E. art. 607 provides:

A. Who may attack credibility.  The credibility of a witness may be attacked by any party, including the party calling him.

B. Time for attacking and supporting credibility.  The credibility of a witness may not be attacked until the witness has been sworn, and the credibility of a witness may not be supported unless it has been attacked.  However, a party may question any witness as to his relationship to the parties, interest in the lawsuit, or capacity to perceive or to recollect.

C. Attacking credibility intrinsically.  Except as otherwise provided by legislation, a party, to attack the credibility of a witness, may examine him concerning any matter having a reasonable tendency to disprove the

truthfulness or accuracy of his testimony.

D. Attacking credibility extrinsically. Except as otherwise provided by legislation:

(1) Extrinsic evidence to show a witness' bias, interest, corruption, or defect of capacity is admissible to attack the credibility of the witness.

(2) Other extrinsic evidence, including prior inconsistent statements and evidence contradicting the witness' testimony, is admissible when offered solely to attack the credibility of a witness unless the court determines that the probative value of the evidence on the issue of credibility is substantially outweighed by the risks of undue consumption of time, confusion of the issues, or unfair prejudice.

As to the incident regarding the alleged attempted stabbing of Lewis's mother and sister, the judge essentially ruled that evidence irrelevant. La. C.E. art. 401.[FN2]  Clearly, Lewis's alleged attack on his family had nothing to do with the facts of this case.

[FN2] La. C.E. art. 401 provides:

"Relevant evidence" means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.

There was no error.  This assignment is without merit.[15]

The United States Fifth Circuit Court of Appeals has held:

> In habeas actions, [a federal court] does not sit to review the mere admissibility of evidence under state law.  However, a state trial court's evidentiary rulings will mandate habeas relief when errors are so extreme that they constitute a denial of fundamental fairness.

Little v. Johnson, 162 F.3d 855, 862 (5th Cir. 1998).  Therefore, to the extent that petitioner is arguing that the state courts misapplied state law, his claim simply is not cognizable.  Federal *habeas corpus* relief may be granted only to remedy violations of the Constitution and laws of the United States; mere violations of state law will not suffice.  28 U.S.C. § 2254; Engle v. Isaac, 456 U.S. 107, 119 (1983).  Additionally, to the extent that petitioner is claiming that the exclusion of the evidence rendered his trial fundamentally unfair under federal law, that claim has no merit.  See, e.g., Newton v. Kemna, 354 F.3d 776, 780-81 (8th Cir. 2004) (trial court's refusal to allow witness to be questioned regarding her mental state and a suicide attempt after the crime was not contrary to, or an unreasonable application of, United States Supreme Court precedent); United States v. Rodriguez, 162 F.3d 135, 144 (1st Cir. 1998).

## Hearsay

Petitioner claims that the trial court erred in allowing hearsay testimony.  On direct appeal, the Louisiana Fourth Circuit Court of Appeal rejected that claim, holding:

> The defendant argues the trial court impermissibly allowed hearsay testimony in violation of La. C.E. art. 801.  Specifically, the

---

[15]  State v. White, 802 So.2d at 871-72; State Rec., Vol. II of V.  The Louisiana Supreme Court denied petitioner's related writ application without assigning reasons.  State v. White, 836 So.2d 56 (La. 2003) (No. 2002-KO-0121); State Rec., Vol. V of V.

defendant complains of the statements Lewis made to the police officers identifying the defendant in the ambulance and again at the hospital.

"Hearsay" is a statement, other than one made by the declarant while testifying at the present trial or hearing, offered in evidence to prove the truth of the matter asserted.  Exceptions to the hearsay rule are set out in La. C.E. art. 803.  The statements in this case were allowed in under the excited utterance exception set out in La.C.E. art. 803(2):  "A statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition."

This court has stated on the issue of the time span between the event and the utterance:

> [The excited utterance exception] requires an occurrence or event sufficiently startling to render the declarant's normal reflective thought processes inoperative.  State v. Reaves, 569 So.2d 650 (La.App. 2nd Cir.1990), writ den., 576 So.2d 25 (La. 1991).  Furthermore, the statement of the declarant must have been a spontaneous reaction to the occurrence or event and not the result of reflective thought.  State v. Henderson, 362 So.2d 1358 (La. 1978).

> In determining whether the declarant was under stress of an excited event, the time span between the event and the statement is considered the most important factor.  State v. Reaves, supra.  The trial court must determine whether the interval between the event and the statement was of sufficient duration to permit a subsidence of emotional upset and a restoration of a reflective thought process.  State v. Henderson supra.

> Other factors which may indicate that a statement was the result of a reflective thought, but which do not automatically justify exclusion, are (1) evidence that the statement was self serving or made in response to an inquiry; expansion of the excited utterance beyond a description of the event and into past or future facts; and proof that, between the event and the statement, the declarant performed tasks requiring reflective thought process.  State v. Baker, 582 So.2d 1320, 1331 (La.App. 4th Cir. 1991).

In this case, the statements made in the ambulance were made immediately after the witness had suffered five gunshot wounds: two to the head and one to the neck.  The statements made in the hospital were made immediately after the doctor and the police officer told the witness that he would not live.  The wounds were so grave that at the time of trial, the witness remained paralyzed on his left side and unable to feed himself.  Thus, in both situations, when the witness made the complained of statements, he was aware of his impending death; and his statements were properly admitted because they were made after an event sufficiently startling to render his normal reflective thought processes inoperative.

The trial court did not err in admitting the statements.

This assignment is without merit.[16]

Again, as noted above, a federal *habeas* court does not review claims regarding the mere admissibility of evidence under state law.  Therefore, to the extent that petitioner is simply arguing that the state courts misapplied the state law regarding the exceptions to the hearsay rule, that claim is not cognizable.

That said, claims regarding the wrongful admission of hearsay evidence may be considered in a federal *habeas* proceeding if a petitioner's rights under the federal Confrontation Clause are implicated.  Ramirez v. Dretke, 398 F.3d 691, 695 (5th Cir. 2005); Gochicoa v. Johnson, 118 F.3d 440, 446-47 (5th Cir. 1997).  However, where, as here, the declarant testifies at trial and is subject to cross-examination, the federal Confrontation Clause simply is not implicated.  United States v. Owens, 484 U.S. 554 (1988); California v. Green, 399 U.S. 149 (1970); Carson v. Collins, 993 F.2d 461, 464 (5th Cir. 1993).

Accordingly, for all of the foregoing reasons, petitioner's claim necessarily fails.

---

[16]   State v. White, 802 So.2d at 872-73; State Rec., Vol. II of V.  The Louisiana Supreme Court denied petitioner's related writ application without assigning reasons.  State v. White, 836 So.2d 56 (La. 2003) (No. 2002-KO-0121); State Rec., Vol. V of V.

- 11 -

<u>"Other Crimes" Evidence</u>

Petitioner claims that the trial court erred in allowing evidence of other crimes.  The state argues that this claim is procedurally barred.  For the following reasons, this Court agrees.

Regarding procedural bars, the United States Fifth Circuit Court of Appeals has held:

> A claim that a state has withheld a federal right from a person in its custody may not be reviewed by a federal court if the last state court to consider that claim expressly relied on a state ground for denial of relief that is both independent of the merits of the federal claim and an adequate basis for the court's decision.  To satisfy the "independent" and "adequate" requirements, the dismissal must "clearly and expressly" indicate that it rests on state grounds which bar relief, and the bar must be strictly or regularly followed by state courts, and applied to the majority of similar claims.  This rule applies to state court judgments on both substantive and procedural grounds.  Where there has been one reasoned state judgment rejecting a federal claim, later unexplained orders upholding that judgment or rejecting the same claim are presumed to rest upon the same ground.

<u>Finley v. Johnson</u>, 243 F.3d 215, 218 (5th Cir. 2001) (citations omitted).

In the last reasoned state court judgment addressing this claim, the Louisiana Fourth Circuit Court of Appeal rejected the claim, holding:

> The defendant argues the trial court allowed the state to introduce impermissible evidence of other crimes in violation of La. C.E. art. 404. [FN3]  The defendant complains that the court should not have admitted evidence that 1) he had been arrested for crack in the past and 2) had shot at an ex-girlfriend.  In neither case did the defense object, precluding raising the issue for the first time on appeal.  La.C.Cr. P. art. 841.

> [FN3] La. C.E. art. 404 provides:

> A.  Character evidence generally. Evidence of a person's character or a

- 12 -

trait of his character, such as a moral quality, is not admissible for the purpose of proving that he acted in conformity therewith on a particular occasion, except:

(1) Character of accused.  Evidence of a pertinent trait of his character, such as a moral quality, offered by an accused, or by the prosecution to rebut the character evidence; provided that such evidence shall be restricted to showing those moral qualities pertinent to the crime with which he is charged, and that character evidence cannot destroy conclusive evidence of guilt.

(2) Character of victim.  (a) Except as provided in Article 412, evidence of a pertinent trait of character, such as a moral quality, of the victim of the crime offered by an accused, or by the prosecution to rebut the character evidence; provided that in the absence of evidence of a hostile demonstration or an overt act on the part of the victim at the time of the offense charged, evidence of his dangerous character is not admissible; provided further that when the accused pleads self-defense and there is a history of assaultive behavior between the victim and the accused and the accused lived in a familial or intimate relationship such as, but not limited to, the husband-wife, parent-child, or concubinage relationship, it shall not be necessary to first show a hostile demonstration or overt act on the part of the victim in order to introduce evidence of the dangerous character of

the victim, including specific instances of conduct and domestic violence; and further provided that an expert's opinion as to the effects of the prior assaultive acts on the accused's state of mind is admissible; or

(b) Evidence of a character trait of peacefulness of the victim offered by the prosecution in a homicide case to rebut evidence that the victim was the first aggressor;

(3) Character of witness. Evidence of the character of a witness, as provided in Articles 607, 608, and 609.

B. Other crimes, wrongs, or acts. (1) Except as provided in Article 412, evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake or accident, provided that upon request by the accused, the prosecution in a criminal case shall provide reasonable notice in advance of trial, of the nature of any such evidence it intends to introduce at trial for such purposes, or when it relates to conduct that constitutes an integral part of the act or transaction that is the subject of the present proceeding.

(2) In the absence of evidence of a hostile demonstration or an overt act

on the part of the victim at the time of the offense charged, evidence of the victim's prior threats against the accused or the accused's state of mind as to the victim's dangerous character is not admissible; provided that when the accused pleads self-defense and there is a history of assaultive behavior between the victim and the accused and the accused lived in a familial or intimate relationship such as, but not limited to, the husband-wife, parent-child, or concubinage relationship, it shall not be necessary to first show a hostile demonstration or overt act on the part of the victim in order to introduce evidence of the dangerous character of the victim, including specific instances of conduct and domestic violence; and further provided that an expert's opinion as to the effects of the prior assaultive acts on the accused's state of mind is admissible.

Even if the defendant had objected, the evidence was properly admitted. The defendant admitted on direct examination that he saw Lewis on the day of the crime, and that he told him, "I don't do nothing no more." He also admitted on direct to possession of a "dangerous" substance. The defendant therefore put evidence of his past drug involvement before the court. Thus, the State was entitled to elicit testimony from him regarding these events. The defendant explained his direct testimony on cross when he said that he had sold crack in the past but had changed his life, and that was the reason he did not have drugs on him when Lewis asked him for some.

As to the incident involving the ex-girlfriend, the defendant testified that he had never possessed a gun, and that the only time he had ever held one was in a pawn shop. The State was thus entitled to refute this testimony.

- 15 -

This assignment is without merit.[17]

It is therefore clear that the state court rejected petitioner's claim based on a procedural rule, i.e. the state's contemporaneous objection rule.[18]  It is further clear that the procedural rule invoked, i.e. Louisiana's contemporaneous objection rule, is an independent and adequate state procedural rule.  <u>Duncan v. Cain</u>, 278 F.3d 537, 541-43 (5th Cir. 2002).

"When the state court has relied on an independent and adequate state procedural rule, federal habeas review is barred unless the petitioner demonstrates either cause and prejudice or that a failure to address the claim will result in a fundamental miscarriage of justice."  <u>Hughes v. Johnson</u>, 191 F.3d 607, 614 (5th Cir. 1999).  In the instant case, petitioner can demonstrate neither.

"To establish cause for a procedural default, there must be something *external* to the petitioner, something that cannot fairly be attributed to him."  <u>Johnson v. Puckett</u>, 176 F.3d 809, 816 (5th Cir. 1999) (quotation marks omitted) (emphasis in original).  Objective factors that can constitute cause include interference by officials that makes compliance with the state procedural rule impracticable, a showing that the factual or legal basis for the claim was not reasonably available to counsel, and ineffective assistance of counsel.  <u>Romero v. Collins</u>, 961 F.2d 1181, 1183 (5th Cir. 1992).  Petitioner has made no attempt to show cause for his default.  "Absent a showing

---

[17]  <u>State v. White</u>, 802 So.2d at 873-74; State Rec., Vol. II of V.  The Louisiana Supreme Court denied petitioner's related writ application without assigning reasons.  <u>State v. White</u>, 836 So.2d 56 (La. 2003) (No. 2002-KO-0121); State Rec., Vol. V of V.

[18]  The fact that the state district court alternatively rejected the claim on the merits is of no moment.  "A state court expressly and unambiguously bases its denial of relief on a state procedural default even if it alternatively reaches the merits of a [petitioner's] claim."  <u>Fisher v. Texas</u>, 169 F.3d 295, 300 (5th Cir. 1999); <u>see also</u> <u>Soria v. Johnson</u>, 207 F.3d 232, 249 n.24 (5th Cir. 2000).

of cause, it is not necessary for the court to consider whether there is actual prejudice." Martin v. Maxey, 98 F.3d 844, 849 (5th Cir. 1996).

Therefore, petitioner's claim is procedurally barred unless the application of the bar will result in a fundamental miscarriage of justice. In order to establish a "fundamental miscarriage of justice," a petitioner must "make a persuasive showing that he is actually innocent of the charges against him. Essentially, the petitioner must show that, as a factual matter, he did not commit the crime for which he was convicted." Finley v. Johnson, 243 F.3d 215, 220 (5th Cir. 2001) (citations omitted). The United States Fifth Circuit Court of Appeals has held:

> To demonstrate actual innocence, it is necessary that the petitioner show that it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt ... in light of all of the evidence, including that alleged to have been illegally admitted (but with due regard to any unreliability of it) and evidence tenably claimed to have been wrongfully excluded or to have become available only after trial.

Lucas v. Johnson, 132 F.3d 1069, 1077 (5th Cir. 1998) (quotation marks and citations omitted). Applying that standard, and considering the evidence of petitioner's guilt in this case, the Court finds that petitioner cannot make a persuasive showing that he is actually innocent of the charges against him. Therefore, he cannot demonstrate that any miscarriage of justice will result from application of the procedural bar. Accordingly, petitioner's claim is procedurally barred in this federal proceeding.

Further, out of an abundance of caution, the Court notes that, even if the claims were not procedurally barred, they would fail on the merits. As previously noted, federal courts do "not sit to review the mere admissibility of evidence under state law"; rather, "a state trial court's

- 17 -

evidentiary rulings will mandate habeas relief when errors are so extreme that they constitute a denial of fundamental fairness."  Little v. Johnson, 162 F.3d 855, 862 (5th Cir. 1998).  In other words, "[t]he erroneous admission of prejudicial evidence will justify habeas relief only if the admission was a crucial, highly significant factor in the defendant's conviction."  Neal v. Cain, 141 F.3d 207, 214 (5th Cir. 1998); see also Little, 162 F.3d at 862 ("[O]nly when the wrongfully admitted evidence has played a crucial, critical, and highly significant role in the trial will habeas relief be warranted.").

In the instant case, petitioner's claim necessarily fails because, as noted by the state court, the evidence was in fact *properly* admitted.  Moreover, even if it had been improper, it is clear that the evidence did not play a crucial, critical, and highly significant role in petitioner's conviction.  This Court has no hesitation in concluding that petitioner was convicted based on the testimony of Mark Lewis.  The fact that petitioner had a prior drug arrest and an altercation involving a firearm with his former girlfriend played no role in his conviction.

<u>Closing Argument</u>

Petitioner claims that the trial court erred in allowing an impermissible closing argument.  During his closing argument, defense counsel noted that the prosecution had presented no results of a powder burn test showing that petitioner had fired a gun:

> MR. MCGUIRE:
> My wife said, "This is kind of spooky.  What about powder burns?"  I mean, somebody used to talk about powder burns.  What about it, checking his hands to see if he fired a gun.  Come on, now.
> If he fired a gun why don't you check his hands and see whether he did it.  That way he couldn't come up here and say, "Man, I didn't fire a gun yesterday or whenever it was."  Let's test for that.

- 18 -

MR. GROOME:
    Objection, Judge.  We haven't heard anybody testify that there's tests for powder burns.

THE COURT:
    I'll sustain the objection.  Limit the argument to the evidence that was actually presented.

MR. MCGUIRE:
    What about presenting lack of evidence?

THE COURT:
    Well, you can talk about it but –

MR. MCGUIRE:
    I'm talking about the lack of evidence.  And that's what they have, a lack of evidence.[19]

On rebuttal, the prosecutor countered:

MR. GROOME:
    The defense's case, their argument, has gone ahead and sort of rests on these red herrings, these things that we went through in voir dire.  They say, for example, that there are no powder burns, so how can we prove our case to you?
    Remember we went through voir dire and we said the law doesn't say we have to show powder burns.  In fact, somebody did ask about powder burns, right?  Okay?  This cop's been there for twenty years.  He didn't say he's ever done powder burns, a test for that.  You may see that on TV.  You don't see these cops doing that.
    And when did they stop him?  The next day.  That's when they arrested him.  Not that night, but the next day.
    The defense didn't bring in any expert here to tell you that these people do powder burns, that it's possible maybe that the police don't do it, but some University of Chicago or something like that – maybe they can do it.  He didn't bring in anybody to tell you that.

MR. MCGUIRE:

---

[19]  State Rec., Vol. II of V, trial transcript, pp. 304-05.

I object, your Honor.  The defense doesn't have an obligation – a burden, your Honor.

MR. GROOME:
Judge, they have no obligation to do that, but if they present forward an idea, I can point out that it's not supported.

THE COURT:
I'm going to overrule the objection.

MR. GROOME:
So they put forward these ideas, but then they don't bring anybody in there.  And I'm going to submit it's because they can't.  There is nobody that going to come in here and say the police could have done these powder burn things.

MR. MCGUIRE:
Objection, again.  There's no evidence of what he's saying.

THE COURT:
This is argument, Mr. McGuire.

MR. MCGUIRE:
All right.

MR. GROOME:
He could have asked the police officer, "Do you do that?  Have you done it?"  He didn't ask him that.[20]

Petitioner argues that the trial court should have sustained the defense objections

because the prosecutor's rebuttal impermissibly placed a burden of proof on the defense.  On direct

appeal, the Louisiana Fourth Circuit Court of Appeal rejected that claim, holding:

The defendant argues the trial court improperly overruled the defense's objection to improper closing argument by the State in violation of La.C.Cr.P. art. 771.[FN4]

---

[20]  State Rec., Vol. II of V, trial transcript, pp. 305-07.

FN4. La.C.Cr.P. art. 771 provides:

> In the following cases, upon the request of the defendant or the state, the court shall promptly admonish the jury to disregard a remark or comment made during the trial, or in argument within the hearing of the jury, when the remark is irrelevant or immaterial and of such a nature that it might create prejudice against the defendant, or the state, in the mind of the jury:
>
> (1) When the remark or comment is made by the judge, the district attorney, or a court official, and the remark is not within the scope of Article 770; or
>
> (2) When the remark or comment is made by a witness or person other than the judge, district attorney, or a court official, regardless of whether the remark or comment is within the scope of Article 770.
>
> In such cases, on motion of the defendant, the court may grant a mistrial if it is satisfied that an admonition is not sufficient to assure the defendant a fair trial.

During the defense's closing argument, counsel argued that the State should have tested for powder burns. In rebuttal, the State argued that it is not required to show powder burns and pointed out that the defendant was arrested the day after the crime when powder burns would have no longer been present. The State continued to argue, over the defense's objection, that the defense had put forth no evidence that the police could have found powder burns the day after the crime. The defendant now argues that the State shifted the burden of proof.

La.C.Cr.P. art. 774 provides in pertinent part:  "The State's rebuttal shall be confined to answering the argument of the defendant."  In this case, the State was properly arguing in rebuttal an issue the defense raised in closing:  that is, the State was under no obligation to present evidence of powder burns.  The argument was totally proper.

This assignment is without merit.[21]

The United States Fifth Circuit Court of Appeal has noted:  "The government cannot shift the burden of proof, nor may a prosecutor comment on the defendant's failure to take the stand. It is not error, however, to comment on the defendant's failure to produce evidence on a phase of the defense upon which he seeks to rely."  United States v. Robles-Vertiz, 155 F.3d 725, 731 (5th Cir. 1998) (citations and quotation marks omitted); see also Malcum v. Burt, 276 F.Supp.2d 664, 684 (E.D. Mich. 2003); Rosales v. Cockrell, 220 F.Supp.2d 593, 622 (N.D. Tex. 2001), aff'd, 48 Fed. App'x 103 (5th Cir. 2002); Moore v. Wyrick, 760 F.2d 884, 886 n.2 (8th Cir. 1985).  Further, even if it were error to comment on a defendant's failure to call a witness, it simply would not be an "error of constitutional dimension" as required for the granting of *habeas* relief.  O'Bryan v. Estelle, 714 F.2d 365, 387-88 (5th Cir. 1983); see also Thomas v. Cowley, No. 90-6105, 1991 WL 151773, at *9 (10th Cir. Aug. 8, 1991) (unpublished); Fluellen v. Campbell, 683 F.Supp. 186, 189 (M.D. Tenn. 1987), aff'd, 842 F.2d 331 (6th Cir. 1988).

Petitioner has failed to demonstrate that the state court's decision was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the

---

[21]  State v. White, 802 So.2d at 874-75; State Rec., Vol. II of V.  The Louisiana Supreme Court denied petitioner's related writ application without assigning reasons.  State v. White, 836 So.2d 56 (La. 2003) (No. 2002-KO-0121); State Rec., Vol. V of V.

Supreme Court of the United States.  Accordingly, applying the AEDPA's deferential standard, this Court likewise rejects petitioner's claim.

Sufficiency of the Evidence

Petitioner claims that there was insufficient evidence to support his conviction.  When he asserted that claim during the state post-conviction proceedings, the state district judge rejected the claim, holding that "[t]his claim is not supported by the record."[22]  Because a sufficiency of the evidence claim presents a mixed question of law and fact, this Court must defer to that state court decision unless it is contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the United States Supreme Court.  28 U.S.C. § 2254(d)(1); Taylor v. Day, Civil Action No. 98-3190, 1999 WL 195515, at *3 (E.D. La. Apr. 6, 1999), aff'd, 213 F.3d 639 (5th Cir. 2000).

The United States Fifth Circuit Court of Appeals has noted that claims of insufficient evidence are to be analyzed pursuant to the standard set forth in Jackson v. Virginia, 443 U.S. 307 (1979):

> In considering challenges to the sufficiency of evidence in habeas proceedings, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."

---

[22]  State Rec., Vol. V of V, Judgment dated December 15, 2003.  The Louisiana Fourth Circuit Court of Appeal found "no error" with respect to that ruling.  State v. White, No. 2004-K-0150 (La. App. 4th Cir. Mar. 1, 2004) (unpublished); State Rec., Vol. IV of V.  The Louisiana Supreme Court then denied the related writ application without assigning reasons.  State ex rel. White v. State, 894 So. 2d 1140 (La. 2005) (No. 2004-KH-1025); State Rec., Vol. IV of V.

Santellan v. Cockrell, 271 F.3d 190, 193 (5th Cir. 2001) (quoting Jackson, 443 U.S. at 319).  "The Jackson inquiry 'does not focus on whether the trier of fact made the correct guilt or innocence determination, but rather whether it made a rational decision to convict or acquit.'"  Santellan, 271 F.3d at 193 (quoting Herrera v. Collins, 506 U.S. 390, 402 (1993)).

In this case, petitioner was convicted of first degree murder.  Louisiana law provides in pertinent part:  "First degree murder is the killing of a human being ... [w]hen the offender has a specific intent to kill or inflict great bodily harm upon more than one person."  La. Rev.Stat.Ann. 14:30.  "Specific intent may be inferred from the circumstances surrounding the offense and the conduct of the defendant. Specific intent to kill may be inferred from a defendant's act of pointing a gun and firing at a person."  State v. Neal, 796 So.2d 649, 657 (La. 2001).  Under Louisiana law, all persons involved in the commission of a crime are equally culpable, and a person may be convicted of murder even if he has not personally fired the fatal shot.  La.Rev.Stat.Ann. § 14:24; State v. Hampton, 750 So.2d 867, 880 (La. 1999).

At trial, Mark Lewis testified that he and the victim were shot by two men.  The victim died; Lewis, although he was shot nine times, survived.  He positively identified petitioner, who was an acquaintance from the neighborhood, as one of the shooters.  Under both federal and Louisiana law, the testimony of a single eyewitness is generally sufficient to support a conviction.  See United States v. King, 703 F.2d 119, 125 (5th Cir. 1983); Neal, 796 So.2d at 658.  Accordingly, this Court finds that the testimony of Lewis alone was sufficient to support petitioner's conviction.

Petitioner has failed to demonstrate that the state court's decision was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the

- 24 -

Supreme Court of the United States.  Accordingly, applying the AEDPA's deferential standard, this

Court rejects petitioner's claim challenging the sufficiency of the evidence.

Photographs

Petitioner claims that the trial court erred in allowing the admission of prejudicial

photographs.  When he asserted that claim during the state post-conviction proceedings, the state

district judge rejected the claim, holding:  "The State is entitled to the moral weight of its evidence.

State v. Wessinger, 736 So.2d 162 (La. 1999)."[23]

In connection with this claim, petitioner cites only to Louisiana law and

jurisprudence.  However, as noted previously in this opinion, federal courts do "not sit to review the

mere admissibility of evidence under state law."  Little v. Johnson, 162 F.3d 855, 862 (5th Cir. 1998).

In any event, the Court notes that, for the reasons found by the state court, the evidence was in fact

*properly* admitted under state law.  See State v. Perry, 502 So.2d 543, 558-59 (La. 1986); see also

State v. Robinson, 874 So.2d 66, 85-86 (La. 2004); State v. Letulier, 750 So.2d 784, 795 (La. 1998).

However, even if the admission of the photographs had been improper, "[t]he

erroneous admission of prejudicial evidence will justify habeas relief only if the admission was a

crucial, highly significant factor in the defendant's conviction."  Neal v. Cain, 141 F.3d 207, 214

(5th Cir. 1998); see also Little, 162 F.3d at 862 ("[O]nly when the wrongfully admitted evidence has

played a crucial, critical, and highly significant role in the trial will habeas relief be warranted.").

---

[23]  State Rec., Vol. V of V, Judgment dated December 15, 2003.  The Louisiana Fourth Circuit Court of Appeal found "no error" with respect to that ruling.  State v. White, No. 2004-K-0150 (La. App. 4th Cir. Mar. 1, 2004) (unpublished); State Rec., Vol. IV of V.  The Louisiana Supreme Court then denied the related writ application without assigning reasons.  State ex rel. White v. State, 894 So. 2d 1140 (La. 2005) (No. 2004-KH-1025); State Rec., Vol. IV of V.

In light of the evidence of petitioner's guilt in the instant case, particularly the testimony of Mark Lewis, it is clear that the photographs did not play a crucial, critical, and highly significant role in petitioner's conviction.

Ineffective Assistance of Counsel

Petitioner claims that he received ineffective assistance of counsel. When he asserted that claim during the state post-conviction proceedings, the state district judge rejected the claim, holding: "These claims are not supported by the record. Furthermore, counsel's efforts prevented defendant from receiving the death penalty."[24]

In Strickland v. Washington, 466 U.S. 668 (1984), the United States Supreme Court established a two-prong test for evaluating claims of ineffective assistance of counsel. A petitioner seeking relief must demonstrate that counsel's performance was deficient *and* that the deficient performance prejudiced his defense. See id. at 697.

To prevail on the deficiency prong, petitioner must demonstrate that counsel's conduct fails to meet the constitutional minimum guaranteed by the Sixth Amendment. See Styron v. Johnson, 262 F.3d 438, 450 (5th Cir. 2001). "Counsel's performance is deficient if it falls below an objective standard of reasonableness." Little v. Johnson, 162 F.3d 855, 860 (5th Cir. 1998). Analysis of counsel's performance must take into account the reasonableness of counsel's actions in light of all the circumstances. See Strickland, 466 U.S. at 689. "[I]t is necessary to 'judge ...

---

[24] State Rec., Vol. V of V, Judgment dated December 15, 2003. The Louisiana Fourth Circuit Court of Appeal found "no error" with respect to that ruling. State v. White, No. 2004-K-0150 (La. App. 4th Cir. Mar. 1, 2004) (unpublished); State Rec., Vol. IV of V. The Louisiana Supreme Court then denied the related writ application without assigning reasons. State ex rel. White v. State, 894 So. 2d 1140 (La. 2005) (No. 2004-KH-1025); State Rec., Vol. IV of V.

counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct.'" Lockhart v. Fretwell, 506 U.S. 364, 371 (1993) (quoting Strickland, 466 U.S. at 690). Petitioner must overcome a strong presumption that the conduct of his counsel falls within a wide range of reasonable representation.  See Crockett v. McCotter, 796 F.2d 787, 791 (5th Cir. 1986); Mattheson v. King, 751 F.2d 1432, 1441 (5th Cir. 1985).

In order to prove prejudice with respect to trial counsel, petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694.  In this context, a reasonable probability is "a probability sufficient to undermine confidence in the outcome." Id.  In making a determination as to whether prejudice occurred, courts must review the record to determine "the relative role that the alleged trial errors played in the total context of [the] trial." Crockett, 796 F.2d at 793.

Petitioner bears the burden of proof when asserting an ineffective assistance of counsel claim.  Petitioner "must demonstrate, by a preponderance of the evidence, that his counsel was ineffective." Jernigan v. Collins, 980 F.2d 292, 296 (5th Cir. 1993); see also Clark v. Johnson, 227 F.3d 273, 284 (5th Cir. 2000).  If a court finds that petitioner has made an insufficient showing as to either of the two prongs of inquiry, i.e. deficient performance or actual prejudice, it may dispose of the claim without addressing the other prong.  Strickland, 466 U.S. at 697.

Petitioner argues that counsel was ineffective in failing to procure funds for an expert to testify that Mark Lewis was so severely brain damaged from his injuries that his testimony was unreliable.  However, the United States Fifth Circuit Court of Appeals has noted:

- 27 -

> [U]nsupported claims regarding [an] uncalled expert witness are speculative and disfavored by this Court as grounds for demonstrating ineffective assistance of counsel.

Evans v. Cockrell, 285 F.3d 370, 377 (5th Cir. 2002).  To show the prejudice required to support an ineffective assistance claim premised on the failure to call a witness, a petitioner must show that the testimony would have been favorable.  Id.  Petitioner furnished neither the state court, nor this Court any evidence to show that any expert would have concluded and testified that the Mark Lewis was so brain damaged as to be an unreliable witness.  Petitioner has, therefore, failed to establish either that counsel's performance was deficient or that prejudice resulted from the failure to secure such an expert witness.[25]

Petitioner has failed to demonstrate that the state court's decision was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States.  Accordingly, applying the AEDPA's deferential standard, this Court rejects petitioner's ineffective assistance of counsel claim.

### Grand Jury

Petitioner claims that the grand jury which indicted him was empaneled in an unconstitutional manner.  Specifically, petitioner argues that the grand jury was empaneled in a racially discriminatory manner and pursuant to a state law subsequently declared to be

---

[25]   Petitioner also claims that his counsel was rendered ineffective by the trial court's overruling of his various objections.  However, that is not truly an ineffective assistance claim.  Rather, what petitioner is challenging is the trial court's adverse rulings.  Petitioner has separately challenged those rulings in his federal application, and his claims with respect to those rulings are have been considered in this opinion.

unconstitutional under the Louisiana Constitution in State v. Dilosa, 848 So.2d 546 (La. 2003).  For

the following reasons, this Court finds that petitioner's claim is procedurally barred.[26]

        In the last reasoned state court judgment addressing the grand jury claim, the state

district judge rejected the claim, holding:

>         While a pretrial motion to quash was filed on behalf of the
> defendant, the present grounds raised by the defendant were not
> asserted in this motion, and thus were not preserved.  La.C.Cr.P.
> 930.4.  Deloch v. Whitley, 684 So.2d 349 (La. 1996).
>         Additionally, defendant's reliance on State v. Dilosa, 848
> So.2d 546 (La. 2003) and State v. Rue, 107 So.2d 702 (La. 1958) are
> misplaced.  Rue dealt with the constitutionality of a particular grand
> jury based on a judge's discretion and not whether a grand jury
> selection statute is a local or special law.[27]

        It is therefore clear that the state court rejected petitioner's grand jury claims based

on a procedural rule, i.e. that claims were waived because they were not presented in a pretrial

motion to quash.[28]  It is further clear that the state rule invoked is an independent and adequate state

---

[26]  In its response, the state does not expressly raise the procedural bar.  Nevertheless, a federal *habeas* court has the discretion to raise a procedural default *sua sponte*.  See Magouirk v. Phillips, 144 F.3d 348, 357-58 (5th Cir. 1998).  Accordingly, **petitioner is hereby specifically instructed that this Report and Recommendation is notice to him that this Court is** *sua sponte* **raising the procedural bar and that petitioner must submit any evidence or argument concerning that issue as part of any objections he may file to this report.**  Id. at 348.

[27]  State Rec., Vol. V of V, Judgment dated December 15, 2003.  The Louisiana Fourth Circuit Court of Appeal found "no error" with respect to that ruling.  State v. White, No. 2004-K-0150 (La. App. 4th Cir. Mar. 1, 2004) (unpublished); State Rec., Vol. IV of V.  The Louisiana Supreme Court then denied the related writ application without assigning reasons.  State ex rel. White v. State, 894 So. 2d 1140 (La. 2005) (No. 2004-KH-1025); State Rec., Vol. IV of V.

[28]  The fact that the state district court also included a cursory rejection of the claim on the merits is of no moment.  "A state court expressly and unambiguously bases its denial of relief on a state procedural default even if it alternatively reaches the merits of a [petitioner's] claim."  Fisher v. Texas, 169 F.3d 295, 300 (5th Cir. 1999); see also Soria v. Johnson, 207 F.3d 232, 249 n.24 (5th Cir. 2000).

ground so as to support the application of a procedural bar.  See, e.g., Williams v. Cain, 125 F.3d 269, 274-76 (5th Cir. 1997).

As previously noted, "[w]hen the state court has relied on an independent and adequate state procedural rule, federal habeas review is barred unless the petitioner demonstrates either cause and prejudice or that a failure to address the claim will result in a fundamental miscarriage of justice."  Hughes v. Johnson, 191 F.3d 607, 614 (5th Cir. 1999).  In the instant case, petitioner can demonstrate neither.

Petitioner cannot meet the "cause and prejudice" test in light of the United States Fifth Circuit Court of Appeals' decision in Pickney v. Cain, 337 F.3d 542 (5th Cir. 2003).  In that case, petitioner's claim regarding discrimination in the selection of the grand jury foreperson was procedurally defaulted in state court because no motion to quash had been filed.  The Fifth Circuit found that petitioner could not overcome the resulting federal procedural bar based on the "cause and prejudice" requirement, holding:

> We need not address whether [petitioner] has made a showing of "cause" because we are confident that he has not been prejudiced. United States v. Shaid, 937 F.2d 228, 234 (5th Cir. 1991).  After reviewing the trial record, we have no doubt that, if [petitioner] had been successful in having his indictment quashed, the State of Louisiana would have sought and obtained a second indictment. ... Given the strength of the State's case, a successful grand jury challenge would have served no purpose other than to delay the trial. Accordingly, [petitioner] has failed to prove actual prejudice.

Id. at 545.  Similarly, this Court has reviewed the evidence against this petitioner and reached the same conclusion.  Accordingly, petitioner cannot overcome the procedural bar in this case based on the "cause and prejudice" test.

Therefore, petitioner's claim is procedurally barred unless the application of the bar will result in a fundamental miscarriage of justice.   As noted previously in this opinion, the Court finds that petitioner cannot make that required showing in light of the evidence adduced at trial. Accordingly, his grand jury claim is procedurally barred in this federal proceeding.[29]

Cumulative Error

Petitioner claims that the cumulative errors in this case deprived him of due process and a fair trial.  When he asserted that claim during the state post-conviction proceedings, the state district judge rejected the claim, holding:  "This claim is not supported by the record.  La.C.Cr.P. Art. 930.2."[30]

The United States Fifth Circuit Court of Appeals initially expressed its disfavor of such claims in federal *habeas corpus* proceedings.  For example, in one case, the Fifth Circuit noted:

> [Petitioner] finally asserts that even if none of his claims entitles him to relief individually, all of them collectively, do.  Habeas relief is available only where a prisoner is in custody in violation of the Constitution or of federal law.  28 U.S.C. § 2254.  [Petitioner] cites no authority in support of his assertion, which, if adopted, would encourage habeas petitioners to multiply claims endlessly in the hope that, by advancing a sufficient number of claims, they could obtain relief even if none of these had any merit.  We receive enough meritless habeas claims as it is; we decline to adopt a rule that would

---

[29]   Further, in any event, the Court notes that petitioner's Dilosa claim is based solely on state law and, therefore, is not even cognizable on federal *habeas* review.  Baker v. Cain, Civ. Action No. 05-3772, 2007 WL 1240203, at *9 (E.D. La. Apr. 26, 2007); Parker v. Cain, 445 F.Supp.2d 685, 697 n.23 (E.D. La. 2006).

[30]   State Rec., Vol. V of V, Judgment dated December 15, 2003.  The Louisiana Fourth Circuit Court of Appeal found "no error" with respect to that ruling.  State v. White, No. 2004-K-0150 (La. App. 4th Cir. Mar. 1, 2004) (unpublished); State Rec., Vol. IV of V.  The Louisiana Supreme Court then denied the related writ application without assigning reasons.  State ex rel. White v. State, 894 So. 2d 1140 (La. 2005) (No. 2004-KH-1025); State Rec., Vol. IV of V.

- 31 -

> have the effect of soliciting more and has nothing else to recommend
> it.  Twenty times zero equals zero.

Mullen v. Blackburn, 808 F.2d 1143, 1147 (5th Cir. 1987).   Nevertheless, the Fifth Circuit

subsequently recognized such claims, albeit in a strictly narrow set of circumstances.   The Fifth

Circuit has noted:

> In Derden v. McNeel, 978 F.2d 1453, 1454 (5th Cir. 1992), cert.
> denied, 508 U.S. 960, 113 S.Ct. 2928, 124 L.Ed.2d 679 (1993),
> the en banc court recognized an independent claim based on cumulative
> error only where "(1) the individual errors involved matters of
> constitutional dimensions rather than mere violations of state law; (2)
> the errors were not procedurally defaulted for habeas purposes; and
> (3) the errors 'so infected the entire trial that the resulting conviction
> violates due process.'" Id., quoting Cupp v. Naughten, 414 U.S. 141,
> 147, 94 S.Ct. 396, 400, 38 L.Ed.2d 368 (1973).  Meritless claims or
> claims that are not prejudicial cannot be cumulated, regardless of the
> total number raised.  Derden, 978 F.2d at 1461.

Westley v. Johnson, 83 F.3d 714, 726 (5th Cir. 1996); see also Jackson v. Johnson, 194 F.3d 641, 655

(5th Cir. 1999) ("The cumulative error doctrine provides relief only when the constitutional errors

committed in the state court trial so fatally infected the trial that they violated the trial's fundamental

fairness.")

In the instant case, the individual claims asserted by petitioner have no merit and,

therefore, he is not entitled to relief merely by cumulating those claims, especially when, as here,

the cumulative effect of the alleged errors cannot be said to have fatally infected the fundamental

fairness of the trial.

## **RECOMMENDATION**

Accordingly, **IT IS RECOMMENDED** that the petition for federal *habeas corpus*

relief filed by Monte White be **DISMISSED WITH PREJUDICE**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation contained in a magistrate judge's report and recommendation within 10 days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object.  <u>Douglass v. United Services Auto. Ass'n</u>, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc).

New Orleans, Louisiana, this third day of July, 2007.

DANIEL E. KNOWLES, III
UNITED STATES MAGISTRATE JUDGE